IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MBA COMMUNITY LOANS PLC,<br><br>    Petitioner,<br><br>    v.<br><br>MARK CASTELLANI,<br><br>    Respondent. | Case No. 20-cv-02359-MMC<br><br>**ORDER GRANTING PETITIONER'S MOTION FOR ORDER CONFIRMING FOREIGN ARBITRAL AWARD**<br><br>Re: Doc. No. 6 |

Before the Court is petitioner MBA Community Loans PLC's ("MCL") Motion for Order Confirming Foreign Arbitral Award, filed June 11, 2020. Respondent Mark Castellani ("Castellani") has not filed opposition. Having read and considered the papers filed in support of the motion, the Court rules as follows.[1]

## BACKGROUND

MCL and Castellani are parties to an agreement titled "Fixed-Sum Loan Agreement Regulated by the Consumer Credit Act 1974" ("the Agreement"), entered into on January 10, 2014. (See Petition, Matthews Decl. Ex. 2.)[2] Said Agreement provides, in relevant part, "[a]ny dispute arising out of or in connection with this Agreement . . . shall be referred to and finally resolved by arbitration." (See id. at § 9.6(b)).

After Castellani failed to make any repayments under the Agreement, MCL, on June 20, 2018, filed with the London Court of International Arbitration ("LCIA") a request

---

[1] By order filed July 30, 2020, the Court took the motion under submission.

[2] The original signatories to the Agreement were Castellani and Prodigy Finance Limited, which, on January 30, 2014, assigned its rights in the Agreement to MCL. (See Petition, Matthews Decl. Ex. 1 at §§ 7, 26.)

1  for arbitration of his claim for sums owed thereunder.  (See Petition, Matthews Decl. Ex. 1
2  at §§ 6, 36.)  Castellani did not participate in the arbitration proceedings.  (See id. at § 3.)
3  The arbitrator, however, found Castellani was duly notified of such proceedings by emails
4  sent to him at two separate email addresses.  (See id. at § 20.)  In light of such finding,
5  the arbitrator proceeded to examine MCL's claim against Castellani, found Castellani had
6  breached the Agreement, and, on February 19, 2019, issued an award ("the Award")
7  ordering Castellani to pay MCL as follows: (1) "principal plus interest until 7 October
8  2018," in the sum of €68,584.42; (2) "interest accrued from 8 October 2018 to 18
9  February 2019," in the sum of €1699.12; (3) "interest from 19 February 2019," the date of
10 the Award, "accruing at the daily rate of €12.68 until final payment"; (4) legal fees
11 incurred to locate Castellani, in the sum of $1500; and (5) legal fees and other expenses
12 incurred in connection with the arbitration, in the sum of £13,701.54.  (See id. at §§ 50-
13 53.)

## DISCUSSION

By the instant action, MCL seeks an order confirming the Award, pursuant to 9 U.S.C. § 207, the statute applicable to arbitration awards issued under the United States Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention").  See 9 U.S.C. §§ 201, 207.[3]

A district court "must confirm a foreign arbitral award unless the party resisting enforcement meets its substantial burden of proving one of seven narrowly interpreted defenses" set forth in the Convention.  See Castro v. Tri Marine Fish Co. LLC, 921 F.3d 766, 773 (9th Cir. 2019) (internal quotation and citation omitted); see also Convention, art. V, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 (listing defenses).  As Castellani has not filed opposition, he has not invoked any of the seven defenses, nor, for the reasons discussed below, has the Court, having reviewed the record presented,

---

[3] The Convention governs the instant action as the Award was obtained in the United Kingdom.  See Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co., 284 F.3d 1114, 1120 & n.3 (9th Cir. 2002).

2

otherwise found any such defense has been implicated.

First, enforcement may be refused if "[t]he parties to the agreement . . . were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or . . . under the law of the country where the award was made." See Convention, art. V(1)(a).  Here, there is no indication that either party was incapacitated or the Agreement was not valid.

Second, enforcement may be refused if "[t]he party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case." See id. at art. V(1)(b).  Under English law, "'proper notice' is such as is likely to bring the relevant information to the attention of the person notified, taking account of the parties' contractual dispute resolution mechanism, including any applicable institutional arbitration rules."  See Zavod Ekran OAO v. Magneco Metrel UK Ltd, [2017] EWHC 2208 (Comm), 2017 WL 03726367 (Eng.).  The LCIA Arbitration Rules provide that "[a]ny written communication . . . may be delivered . . . by email" to "an address agreed or designated by the receiving party for that purpose."  See LCIA Arbitration Rules, art. 4.1, 4.3.  Here, as noted, Castellani was notified of the arbitration proceedings by emails sent to two separate email addresses (see Petition, Matthews Decl. Ex. 1 at § 20), and Castellani had previously confirmed he could be contacted at both such addresses; additionally, one of the two addresses was listed as a contact for him in the Agreement (see id. at § 21).

Third, enforcement may be refused if "[t]he award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration."  See Convention, art. V(1)(c).  Here, as noted, the Agreement provides that "[a]ny dispute arising out of or in connection with this Agreement . . . shall be referred to and finally resolved by arbitration" (see Petition, Matthews Decl. Ex. 2 at § 9.6(b)), which broad language clearly covers the instant claim and any dispute thereof.

Fourth, enforcement may be refused if "[t]he composition of the arbitral authority or

3

the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place." See Convention, art. V(1)(d). Here, the arbitration proceedings were in accordance with the Agreement, which provides for arbitration "under the Rules of the [LCIA]," and that the "number of arbitrators shall be one," the "seat, or legal place, of arbitration shall be London," and the "language to be used in the arbitration shall be English." (See Petition, Matthews Decl. Ex. 2 at § 9.6(b)).

Fifth, enforcement may be refused if "[t]he award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made." See Convention, art. V(1)(e). Here, the LCIA Arbitration Rules provide that "[e]very award . . . shall be final and binding on the parties," see LCIA Arbitration Rules, art. 26.8, and there is no indication the Award has been set aside or suspended by any court or authority of the United Kingdom.

Sixth, enforcement may be refused if "[t]he subject matter of the difference is not capable of settlement by arbitration under the law of th[e] country" where recognition and enforcement are sought. See Convention, art. V(2)(a). Breach of contract claims are regularly settled by arbitration in the United States. See, e.g., Levi Strauss & Co. v. Aqua Dynamics Sys., Inc., 2020 WL 4051672 (N.D. Cal. July 20, 2020).

Seventh, enforcement may be refused if "[t]he recognition or enforcement of the award would be contrary to the public policy of th[e] country" where recognition and enforcement are sought. See Convention, art. V(2)(b). Said defense, however, "applies only when confirmation or enforcement of a foreign arbitration award would violate the forum state's most basic notions of morality and justice," see Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Def. Sys., Inc., 665 F.3d 1091, 1097 (9th Cir. 2011) (internal quotation and citation omitted), a circumstance clearly not pertaining here.

Accordingly, none of the above-listed defenses having been raised or otherwise appearing, the Court finds MCL is entitled to an order confirming the Award. "It is well

settled," however, "that a money judgment by an American court must be in American currency," see Shaw, Savill, Albion & Co. v. The Fredericksburg, 189 F.2d 952, 954 (2d Cir. 1951), and, in accordance therewith, MCL seeks an award in U.S. dollars.

In that regard, one component of the Award was, as noted, made in U.S. dollars, specifically, the $1500 awarded for legal fees incurred in locating Castellani. The remaining components, as calculated by MCL, which calculation the Court finds reasonable, are the equivalent of: (1) principal plus interest until October 7, 2018, in the sum of $77,644.54; (2) interest accrued from October 8, 2018, to February 18, 2019, in the sum of $1923.57; (3) interest from the date of the Award, i.e., February 19, 2019, accruing at the daily rate of $14.36 until final payment of the Award; and (4) legal fees and other expenses incurred in connection with the arbitration, in the sum of $15,460.82. (See Petition, Matthews Decl. ¶ 10).

In sum, MCL is entitled to judgment in the amount of $96,528.93, together with interest from the date of the Award, February 19, 2019, accruing at the daily rate of $14.36.

**CONCLUSION**

For the reasons stated above, the motion is hereby GRANTED, and MCL shall have judgment against Castellani in the sum of $96,528.93, together with interest accruing from February 19, 2019 until final payment of said judgment, at the daily rate of $14.36.

**IT IS SO ORDERED.**

Dated: August 4, 2020

MAXINE M. CHESNEY
United States District Judge